UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-1550(DSD/JJG)

David Gansen,

        Plaintiff,

v.                                                          **ORDER**

County of Rice, County of
Steele, City of Northfield,
City of Owatonna, Barbara
Brewington, and Rice/Steele
County Consolidated Dispatch
Public Safety Board,

        Defendants.


    Michael L. Lander, Esq., Ruth Y. Ostrom, Esq., 301 Fourth
    Avenue South, Suite 270, Minneapolis, MN 55415, counsel
    for plaintiff.

    Teresa M. Thompson, Esq., Anh T. Le, Esq. and Parsinen,
    Kaplan, Rosberg & Gotlieb, 100 South Fifth Street, Suite
    1100, Minneapolis, MN 55402, counsel for defendants.


    This matter is before the court upon defendants' motion for summary judgment. Based upon a review of the file, record, and proceedings herein, and for the reasons stated, defendants' motion is denied in part and granted in part.


**BACKGROUND**

    This is an action seeking monetary damages and injunctive relief pursuant to claims under the Fair Labor Standards Act.

Plaintiff David Gansen also claims that defendants Rice/Steele County Consolidated Public Safety Dispatch Joint Powers Board ("Board"), Rice County, Steele County, the City of Northfield, the City of Owatonna, the City of Fairbault and Barbara Brewington unlawfully terminated his employment in violation of the Minnesota Whistleblower Act and the Fourteenth Amendment of the United States Constitution.

Plaintiff worked as a computer coordinator for Pearl Street 911 Call Center ("Pearl Street"), starting in August of 2000. (Gansen Decl. ¶¶ 2, 4.)[1] Pearl Street provides emergency dispatch services to the counties of Rice and Steele and the cities of Fairbault, Northfield and Owatonna. (Peterson Dep. at 10.) The Board governs Pearl Street. (Id.) During the relevant time period, Pearl Street Administrator Barbara Brewington oversaw the operation of Pearl Street and had the sole authority to hire and fire employees. (Brewington Dep. at 13.)

Plaintiff alleges that, upon hiring, Brewington told him that he would be a salaried employee with additional compensation for time

---

[1] Defendants have moved the court to strike Gansen's Declaration dated July 8, 2005, and filed July 12, 2005, as untimely and improper. However, the court finds that any untimeliness of the declaration was the result of excusable neglect and did not prejudice defendants. Further, the alleged inconsistencies between the declaration and Gansen's deposition testimony are either not present or insufficient to warrant exclusion. Therefore, defendants' motion to strike is denied.

worked over forty hours per week ("comp time"). (Gansen Dep. at 190-91.)  In the first few weeks after being hired, plaintiff was given the Pearl Street 911 Communication Center Policy and Standard Operating Guideline Manual ("manual"), authored by Brewington. (Gansen Decl. ¶ 3.)  The manual sets forth Pearl Street's general policies and specific procedures for the discipline and termination of employees.  (Brewington Dep. at 31-33.)

As Pearl Street's computer coordinator, plaintiff installed software, maintained systems and performed troubleshooting. (Gansen Dep. at 173-75.)  Plaintiff did not supervise any other employees and reported his daily activities to Brewington.  (Gansen Decl. ¶ 8.)  Plaintiff worked with Loren Lovhaug, a computer consultant contracted by Pearl Street.  (Id.)  Plaintiff alleges that he worked under the supervision of both Brewington and Lovhaug, that his position lacked authority and that almost all of his duties consisted of unsophisticated tasks. (See id. ¶¶ 7-8.)

In the fall of 2001, Brewington directed Pearl Street's salaried employees to begin recording their work hours on time sheets. (Brewington Dep. at 37-38.)  When plaintiff handed in his time sheet, Brewington noticed that he had recorded over 300 hours of accumulated comp time.  (Id. at 38.)  She discussed the issue with him and they agreed that he would start to take Fridays off in order to reduce the accumulated comp time. (Id. at 39.)

3

In the months that followed, plaintiff was not always able to take Fridays off because of his workload. (Gansen Dep. at 192.) As a result, his time sheets reflected an increasing amount of comp time. (Id.) Brewington did not discuss the issue with plaintiff again, but was aware of his accumulating comp time. (See Brewington Dep. at 43.) Sometime in late 2002 or early 2003, Gansen informed Brewington that the Board was violating the law by not paying him overtime. (Gansen Decl. ¶ 10.) Brewington responded that he was a salaried employee and was not owed any overtime pay. (Brewington Dep. at 38.) In April of 2003, plaintiff sent a letter to the Board requesting the payment of his unpaid hours of comp time. (Peterson Dep. at 73-75.) The Board met in May of 2003 in closed session to discuss the issue but did not make a decision about how to resolve it. (Id. at 85-88; 101-02.)

In addition to the overtime disagreement, plaintiff informed both Brewington and Lovhaug on numerous occasions about his concern that Pearl Street lacked software licenses. (Gansen Decl. ¶ 12.) First, in February of 2002, he wrote Brewington a note regarding Pearl Street's lack of Windows 2000 server licenses. (See Greenman Decl. Ex. J.) Plaintiff brought the issue up again in March of 2002. (Brewington Dep. at 142-43.) In December of 2002, he informed Lovhaug and Brewington that the Windows 2002 software was

4

unlicensed and that he had ordered two licenses.  (See Greenman Decl. Ex. HH.)  Finally, on April 23, 2003, plaintiff informed Brewington that Pearl Street had more licenses for Aether software than it purchased.  (See id. Ex. AA.)

On May 15, 2003, Brewington suspended plaintiff for two weeks without pay based on alleged security breaches of the Pearl Street computer system.  (See Greenman Decl. Ex. I.)  Brewington informed him that the suspension was in response to his remote installation of software onto a third party's computer, thus risking unwanted access to Pearl Street's system.  (See id.)  Further, she alleged plaintiff had improperly given administrative access to the system to Tom Woodfill, a computer consultant for Steele County.  (See id.)  At his suspension meeting, plaintiff did not provide any explanation.  (Gansen Dep. at 226.)

On May 16, 2003, the day after his suspension meeting, plaintiff provided Steele County Sheriff Gary Ringhofer with a letter requesting that his office be sealed and describing various software violations at Pearl Street.  (See Greenman Decl. Ex. O.) In the letter, plaintiff stated that he had been trying to fix the licensing problems since he began working at Pearl Street, but was prevented from doing so by his superiors.  (See id.)  On May 19, 2003, Ringhofer met with Brewington, members from the Board, and the Steele County Attorney and computer technician to discuss

plaintiff's allegations concerning Pearl Street's illegal activity. (Brewington Dep. at 208-09.)  The Board decided not to investigate the charges.  (Id.)

Shortly thereafter, Brewington conducted a sweep of plaintiff's work computer and discovered that he was using Pearl Street's administrative password as his personal email address. (Id. at 199-200.)  She also alleges to have discovered that administrative rights to Pearl Street's system were granted to seventeen different users and that plaintiff's computer history contained links to pornographic sites.  (See id. at 215-16; 222-24.)  Brewington relayed this information to the Board on May 28, 2003.  (See Greenman Decl. Ex. W.)  The Board decided that Brewington should terminate plaintiff the morning he returned from his suspension.  (Shea Dep. at 19.)

When plaintiff returned to work on June 2, 2003, Brewington called him into her office and handed him a letter that detailed her reasons for terminating his employment.  (See Brewington Dep. at 230.)  The reasons included the information she discovered as a result of the computer sweep.  (See Greenman Decl. Ex. Y.)  The letter also informed him that he had the opportunity to respond to the allegations and would be informed of the final decision.  (See id.)  Plaintiff stated that he wanted to first speak with his attorney, so Brewington allowed him a few hours to prepare his

response.  (Gansen Dep. at 239.)  When the meeting reconvened, plaintiff denied the allegations, stated that his attorney was unavailable and asked for more time to consult with his attorney. (Gansen Decl. ¶ 20.)  Brewington informed plaintiff that she was going on vacation and could not wait.  (_Id._)  Brewington then confirmed his termination.  (_Id._)

Plaintiff brought this action against defendants on July 13, 2004, claiming breach of contract, termination in violation of the Minnesota Whistleblower Act, violation of the Fair Labor Standards Act and deprivation of due process under the Fourteenth Amendment of the U.S. Constitution.  Defendants now move for summary judgment on all claims.[2]

### DISCUSSION

### I.   Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party

---

[2]  Plaintiff has not disputed defendants' motion for summary judgment as to his breach of contract claim.  Therefore, the court finds that plaintiff has waived his breach of contract claim.

to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Due Process Claim

Plaintiff contends that defendants violated his due process rights by failing to provide him with proper notice and an opportunity to respond to the charges against him. Due process is

implicated when the government acts in a manner that deprives an individual of a recognized liberty or property interest. See Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). In analyzing due process claims, courts must begin with a two-step inquiry, asking "whether the [plaintiff has] a protected interest at stake, and if so, what process is due." Bliek v. Palmer, 102 F.3d 1472, 1475 (8th Cir. 1997). As to the first inquiry, public employees have a protected property interest in employment if the interest is created by an independent source such as state law or a contract for employment.[3] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). Under Minnesota law, an employee handbook can give rise to a unilateral contract for employment. See Pine River State Bank v. Mettille, 333 N.W.2d 622, 626-27 (Minn. 1983).

As to the second inquiry, those with a protected interest in their employment have a pre-termination right to "be given notice of the charges against them, an explanation of the evidence and an opportunity to be heard." de Llano v. Berglund, 282 F.3d 1031, 1034-35 (8th Cir. 2002) (citing Loudermill, 470 U.S. at 542). Sufficient notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the

---

[3] An employment contract may be implied if it arises "out of customs, practices, and de facto policies." Winegar v. Des Moines Indep. Comm'y Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994) (citing Perry v. Sindermann, 408 U.S. 593, 601-02 (1972)).

pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). In turn, the opportunity to respond may be in person or in writing and serves as "an initial check against mistaken decisions." Loudermill, 470 U.S. at 545. There need not be a delay between notice of the charges and an opportunity to respond. See Coleman v. Reed, 147 F.3d 751, 754 (8th Cir. 1998). The opportunity to respond must be provided prior to the effective termination, but need not occur prior to the decision to terminate. See Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir. 1988).

Defendants argue that plaintiff did not have a protected property interest in employment and that, even if he did, plaintiff failed to avail himself of post-termination relief, which defeats his due process claim. However, the court need not resolve these issues because plaintiff received adequate due process and his claim fails as a matter of law. On the morning of June 2, 2003, plaintiff was given oral and written notice of termination, explanation of the charges against him, an opportunity to respond and even an opportunity to consult counsel before responding. Even though plaintiff's attorney could not attend the meeting, defendants met all of their obligations to afford plaintiff due

process in the pre-termination proceeding.[4]   Therefore, summary judgment in favor of defendants on plaintiff's due process claim is warranted.

## III. Overtime Compensation Claim

Plaintiff alleges that defendants failed to pay him overtime compensation as required by the Fair Labor Standards Act ("FLSA"). FLSA provides that employees who work more than forty hours per week are to be paid overtime at a rate of one and one-half times their normal hourly rate.  See 29 U.S.C. § 207(a)(1).  However, an employee who works in an administrative capacity is exempt from the overtime requirements.   29 U.S.C. § 213(a)(1); McAllister v. Transamerica Occidental Life Ins. Co., 325 F.3d 997, 999 (8th Cir. 2003).

The Department of Labor has promulgated tests to determine if an employee falls under the administrative exemption.   See 29 C.F.R. § 541.2.  Where an employee is paid over $250 per week, the

---

[4]  Plaintiff cites Wallin v. Dep't of Corr., 153 F.3d 681 (8th Cir. 1998), in support of his argument that defendants had to provide him due process before he was suspended on May 15, 2003. Similar to this case, the plaintiff in Wallin was suspended and, upon return from his suspension, was terminated.  See id. at 685. However, contrary to plaintiff's contention, the court in Wallin did not hold that a pre-termination hearing was adequately conducted before the employee was suspended.  See id. at 690. Rather, the court held that the hearing conducted after suspension and before termination provided the plaintiff with all the process he was due.   See id.  Therefore, Wallin directly contradicts plaintiff's argument and supports this court's holding.

short test is used. <u>See</u> 29 C.F.R. §§ 541.2(e)(2), 541.214(a). To be exempt from overtime requirements under the short test, the employee must (1) primarily perform non-manual work that is directly related to management policies or the general business operations of his employer and (2) exercise discretion and independent judgment in his duties. <u>See</u> 29 C.F.R. § 541.214(a); <u>Nelson v. Ellerbe Becket Constr.</u>, 283 F. Supp. 2d 1068, 1079 (D. Minn. 2003). The employer has the burden of proving each element. <u>Fife v. Harmon</u>, 171 F.3d 1173, 1174 (8th Cir. 1999).

To determine whether plaintiff's primary duties directly relate to management policies or the general business operation, the court considers the following factors: (1) the relative importance of the employee's administrative duties as compared with other duties, (2) the frequency with which the employee exercises discretion, (3) the extent of the employee's supervisory freedom and (4) the relationship between the employee's salary and the wages other employees are paid for similar non-exempt work. <u>See</u> C.F.R. § 541.206(b); <u>Ellerbe</u>, 283 F. Supp. 2d at 1080. To determine whether the employee exercises discretion and independent judgment, the court considers whether the employee's duties require him to compare and evaluate possible courses of conduct and make

decisions based on those considerations, and if the employee was free from supervision with respect to matters of significance.  See 29 C.F.R. § 541.207(a); Ellerbe, 283 F. Supp. 2d at 1081.

Defendants assert that no overtime payment is due because plaintiff's employment falls under the administrative exemption. It is undisputed that plaintiff earned a salary that exceeded $250 per week and that the short test for exemption applies to this case.  The parties dispute, however, whether plaintiff meets both the managerial and discretion prongs of the short test.  As to the managerial prong, the record conflicts as to the nature and importance of plaintiff's job duties and the frequency with which he exercised them.  Because credibility determinations and the weighing of evidence must be undertaken before a determination can be made with respect to this prong, a genuine issue of material fact exists.

As to the discretion prong, the record before the court includes differing testimony about his relative freedom from supervision and the frequency with which plaintiff exercised discretion.  As with the first prong, credibility determinations and the weighing of evidence must be undertaken before a determination can be made with respect to this prong.  For all of the above reasons, genuine issues of material fact preclude summary judgment on plaintiff's FLSA claim.

13

**IV.  Whistleblower Claim**

Plaintiff claims that defendants violated the Minnesota Whistleblower Act by retaliating against him after he made reports of defendants' violations of the law. See Minn. Stat. § 181.932 (2004). The court analyzes plaintiff's claim under the McDonnell Douglas framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, a plaintiff must make a prima facie showing that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action and (3) there is a causal connection between the two. See Eliserio v. United Steelworkers of Am. Local 310, 398 F.3d 1071, 1078-79 (8th Cir. 2005); Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Statutorily protected activity includes reporting in good faith a suspected violation of law. Hicks v. St. Mary's Honor Ctr., 90 F.3d 285, 292 (8th Cir. 1996); Cox v. Crown CoCo, Inc., 544 N.W.2d 490, 496 (Minn. Ct. App. 1996). Although "good faith" is generally a question of fact inappropriate for summary judgment, the court may determine as a matter of law whether certain conduct constitutes a report under the statute. Rothmeier v. Inv. Advisers, Inc., 556 N.W.2d 590, 593 (Minn. Ct. App. 1996). A plaintiff's purpose in making the report must be to expose an illegality and not to constitute a vehicle "to support a belated whistle-blowing claim." Obst v. Microtron, Inc., 614 N.W.2d 196,

202 (Minn. 2000). A plaintiff can show a causal connection between protected activity and adverse employment action through circumstantial evidence that supports an inference of retaliatory motive. Pope v. ESA Servs., Inc., 406 F.3d 1001, 1010 (8th Cir. 2005). Without more, a showing of temporary proximity between an employee's report and the adverse employment action fails to establish causation. Id.

Under McDonnell Douglas, if a plaintiff can establish a prima facie case of whistleblowing, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the employee's termination. Sigurdson v. Isanti County, 386 N.W.2d 715, 720 (Minn. 1986). Once articulated, the burden shifts back to the plaintiff to show that the defendant's non-retaliatory reason is pretextual. Id.

It is undisputed that plaintiff suffered an adverse employment action. As to statutorily protected activity, plaintiff argues that he made three reports of violations of the law to defendants. The first two alleged reports occurred in late 2002 and on April 3, 2003, and concerned the alleged FLSA violation. It is undisputed that these reports were made in good faith. Therefore, plaintiff has established the statutorily protected activity prong of the McDonnell Douglas test as to the FLSA reports. The third alleged report was plaintiff's letter to Ringhofer concerning unlicensed

15

software.  However, plaintiff has failed to show that his report to Ringhofer was made in good faith.  Plaintiff sent the letter the day after he was suspended, having written it in the middle of the night because he couldn't sleep and was "upset."  This motivation is impermissible because it is not based on an alleged violation of the law.  Because plaintiff has failed to show that his third report was made in good faith, it cannot be the basis of his claim for protection under the Whistleblower Act.

As to the FLSA reports, defendants contend that plaintiff has failed to show a causal connection between the reports and his termination.  In response, plaintiff argues that his April 3, 2003, FLSA report establishes the necessary temporal proximity to his suspension and termination.  Plaintiff sent the report via letter to defendants approximately six weeks before suspension and eight weeks before termination.  However, even if such proximity supports an inference of causation, plaintiff must present additional evidence.  See Pope, 406 F.3d at 1010; see also Green v. Franklin Nat'l Bank, No. 03-6188, 2005 WL 1324092, at *6 (D. Minn. May 16, 2005) (three-week lapse between report and termination is alone insufficient to show casual connection).

Plaintiff asserts that an email sent by Lovhaug on May 9, 2003, to defendant Brewington establishes an additional inference of retaliatory motive.  However, plaintiff only attests that the

email "is what it purports to be." (Greenman Decl.) When presenting evidence at the summary judgment stage, "documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)." Stuart v. Gen. Motors Corp., 217 F.3d 621, 635 n.20 (8th Cir. 2000). Because plaintiff failed to authenticate the email through either an affidavit based on personal knowledge or a deposition, the evidence is inadmissible under Rule 56(e). Therefore, the court will not consider the evidence. For all of the above reasons, plaintiff has not met his prima facie burden to show causation. His Whistleblower Act claim must fail.

Even if plaintiff could meet his prima facie burden, he has failed to show that defendants' reasons for termination were mere pretext. Defendants provided evidence that plaintiff was terminated because of various security breaches that demonstrated a lack of good judgment. Unsatisfactory job performance is a legitimate and non-retaliatory reason for termination. Richmond v. Bd. of Regents of Univ. of Minn., 957 F.2d 595, 598 (8th Cir. 1992). Plaintiff argues that the alleged security breaches did not constitute actual breaches. However, plaintiff's perspective on the gravity of his conduct does not alone suffice to raise an

inference of pretext.[5]  Further, it is not the role of the court to "sit as [a] super-personnel department reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 781 (8th Cir. 1995).  Because plaintiff failed to present evidence of pretext, summary judgment is appropriate even if he had made his prima facie showing of a Whistleblower Act violation.  Therefore, summary judgment in favor of defendants on plaintiff's whistleblower claim is warranted.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendants' motion for summary judgment [Doc. No. 11] is granted in part and denied in part.

2.   Defendants' motion to strike [Doc. No. 32] is denied.

Dated:  November 28, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court

---

[5]   Plaintiff also repeats his due process arguments in an attempt to establish pretext, but the court has already determined that he received adequate due process.